**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.:  1:26-cv-963

RE/MAX, LLC

Plaintiff,

v.

MMS INVESTMENT GROUP, LLC, a California Limited Liability Company, and
MIKE SANCHEZ, an Individual

Defendants.

---

**COMPLAINT AND JURY DEMAND**

---

Plaintiff RE/MAX, LLC ("RE/MAX") for its Complaint against Defendants MMS Investment Group, LLC ("MMS") and Mike Sanchez ("Sanchez") (collectively "Defendants"), by and through counsel, Polsinelli PC, alleges as follows:

**<u>Nature of the Action</u>**

RE/MAX and Defendants were parties to two Franchise Agreements (defined below) pursuant to which Defendants were required to operate and promote the business of RE/MAX franchised offices in Southern California. In connection with each of the Franchise Agreements, Sanchez executed and delivered to RE/MAX a promissory note (collectively, the "Promissory Notes"), pursuant to which Sanchez executed and delivered his promise to pay RE/MAX certain amounts owed in connection with the Franchise Agreements, and a Guaranty and Assumption of Obligations (collectively, the "Guaranties"), pursuant to which Sanchez agreed to be jointly and severally liable to RE/MAX for all of the Defendants' obligations to RE/MAX under the Franchise

Agreements. In violation of their contractual obligations to RE/MAX under the Franchise Agreements, Defendants failed to pay amounts owed. In response, RE/MAX was compelled to terminate the Franchise Agreements. Under the Franchise Agreements, in the event of termination Defendants are required to pay RE/MAX Outstanding Amounts owed and what is defined as Lost Future Revenue to compensate RE/MAX for the losses it would suffer because Defendants did not fully perform for the term of the Franchise Agreements; they have not fully performed. Defendants were also required to immediately cease using the RE/MAX Marks and Copyrighted Works (defined below). They have not done so, and they and their former RE/MAX sales associates continue to use them in connection with their real estate business, compounding the harm to RE/MAX. RE/MAX seeks injunctive and monetary relief for direct and contributory acts of trademark counterfeiting, trademark infringement, and unfair competition under the Federal Trademark Act, 15 U.S.C. § 1051 *et seq.*, copyright infringement under the U.S. Copyright Act, 17 U.S.C. § 501 *et seq.*, and for breach of contract under Colorado common law.

## <u>The Parties</u>

1.      RE/MAX is a Delaware limited liability company with its principal place of business at 5075 South Syracuse Street, Denver, Colorado 80237.

2.      Upon information and belief, MMS is a California limited liability company with its principal place of business at 121 Placemark, Irvine, California 92614.

3.      Upon information and belief, Defendant Mike Sanchez is the owner and Shareholder of Defendant MMS.

## Jurisdiction and Venue

4.      This action arises under §§ 1114 and 1125(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, 17 U.S.C. § 501 *et seq.* of the U.S. Copyright Act, and Colorado common law.

5.      The Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 1367.

6.      This Court has personal jurisdiction over Defendants and venue is proper in this District because Defendants agreed in the Franchise Agreements (Exs. A and B, ¶ 15(K)) and Assignment of Franchise Agreements (Exs. C, D, and E, §C) to this Court's personal jurisdiction over them and that venue was appropriate in this District, and further because Defendants have caused an injury to RE/MAX in this District, as set forth in greater detail below.

7.      This Court further has jurisdiction over Defendant Mike Sanchez because he agreed in the Guaranties executed in connection with the Franchise Agreements (Exs. F and G) to this Court's personal jurisdiction over him.

## Background

8.      Operating throughout the United States, the RE/MAX franchise network (the "RE/MAX Network") is a real estate system of independently owned and operated franchised offices and their affiliated independent contractor/sales associates who are authorized to use the RE/MAX trademarks in connection with providing real estate brokerage services.

9.      Those affiliated with the RE/MAX Network have provided real estate brokerage services in interstate commerce in the United States in connection with the RE/MAX and REMAX

word marks, including a stylized form distinguished by "RE/MAX" in all capital letters in red or

blue, accented with a contrasting red or blue diagonal slash, examples of which are set forth below:

    

a service mark consisting of a hot air balloon design, an example of which is set forth below:

            

and the RE/MAX "for sale" sign design, examples of which are set forth below:

        

 

10.    RE/MAX owns numerous U.S. Trademark Registrations for a family of marks that includes those set forth above, including, but not limited to, U.S. Trademark Registration Nos. 1,139,014; 1,173,586; 1,691,854; 1,702,048; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,403,626; 2,850,985; 3,296,461; 3,338,086; 4,716,534; 4,986,346, 5,524,499, 5,504,643, 5,524,502, 5,504,642, 5,524,493, 5,411,423, 5,453,086, and 5,453,087. Copies of the registration certificates for these marks are attached as **Exhibit H**.

11.    U.S. Trademark Registrations 1,139,014; 1,173,586; 1,691,854; 1,702,048; 1,720,592; 1,900,865; 1,902,982; 2,106,387; 2,119,607; 2,403,626; 2,850,985; 3,296,461; 3,338,086; 4,716,534; and 4,986,346 have achieved incontestability status under 15 U.S.C. § 1065.

12.    All other U.S. Trademark Registrations listed above are valid and subsisting and therefore constitute prima facie evidence of the validity of the marks set forth in these registrations and RE/MAX's exclusive right to use these marks in connection with the services set forth in these registrations.

13.    The federal registration rights and common law rights of RE/MAX in the marks described above are collectively referred to herein as the "RE/MAX Marks."

14.     RE/MAX also owns U.S. Copyright Registration No. VA 1-418-052 covering

         

, No. VA 1-418-053 covering                     , and No. VA 1-187-335

covering various photographs of the RE/MAX balloon design (collectively, the "Copyrighted

Works"). Copies of the certificates of registrations are attached as **Exhibit I**.

15.     The RE/MAX Marks and Copyrighted Works are used by those in the RE/MAX

Network on a variety of advertising media including office signage, property listings, property

signage, directional signs, open house signs, Internet websites, business cards, television

commercials, billboards, bus stop benches, banners, and other advertising and promotional items.

16.     Since 1973, RE/MAX and the RE/MAX Network have invested billions of dollars

to develop, promote, and maintain the RE/MAX Marks, among other marks owned by RE/MAX,

in the United States and worldwide.

17.     Franchisees and their sales associates ("Sales Associates") in the RE/MAX

Network have used the RE/MAX Marks and Copyrighted Works in connection with representing

either the buyer or the seller more than 25 million times in real estate sale transactions in the United

States and worldwide, resulting in over five trillion dollars in sales volume from 1973 to the

present.

18.     At any given time, there are more than 130,000 RE/MAX property listings in the

United States, almost all of which display prominently one or more of the RE/MAX Marks.

19.     As a result of substantial sales and extensive advertising and promotion, the RE/MAX Marks have become widely and favorably known as identifying real estate brokerage services originating from, sponsored by, or associated with the RE/MAX Network.

20.     The public has come to associate the well-known and distinctive RE/MAX Marks with the RE/MAX Network as a source of high-quality real estate brokerage services.

### The RE/MAX Proper Franchise Agreements

21.     Defendant Mike Sanchez entered a franchise agreement effective March 10, 2023 with RE/MAX to own and operate the RE/MAX real estate brokerage located at 12505 N Mainstreet Ste 240, Victoria Gardens Mall, Rancho Cucamonga, California 91739 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Proper, a copy of which is attached as **Exhibit A** (the "Franchise Agreement 1").

22.     On March 10, 2023, in connection with the Franchise Agreements, Defendant Mike Sanchez also executed and delivered to RE/MAX two promissory notes, copies of which are attached as **Exhibits R and S** (the "Promissory Notes"),

23.     Defendant Mike Sanchez entered a franchise agreement effective February 20, 2023 with RE/MAX to own and operate the RE/MAX real estate brokerage located at 2135 N Bellflower Blvd, Long Beach, California 90815 using the RE/MAX Marks and Copyrighted Works under the trade name RE/MAX Proper, a copy of which is attached as **Exhibit B** (the "Franchise Agreement 2"). Franchise Agreements 1 and 2 are referred to as the "Franchise Agreements".

24.     On May 16, 2023, Defendant Mike Sanchez assigned, and Meta Capital, Inc. accepted, all right, title and interest as well as the obligations, responsibilities and duties in and to

the Franchise Agreement 2, pursuant to §C of the Assignment of Franchise Agreement, a copy of which is attached as **Exhibit C** (the "Franchise Agreement 2 First Assignment").

25.     On January 1, 2024, Defendant Mike Sanchez assigned, and Defendant MMS accepted, all right, title and interest as well as the obligations, responsibilities and duties in and to the Franchise Agreement 1, pursuant to §C of the Assignment of Franchise Agreement, a copy of which is attached as **Exhibit D** (the "Franchise Agreement 1 Assignment").

26.     On January 1, 2024, Meta Capital, Inc. assigned, and Defendant MMS accepted, all right, title and interest as well as the obligations, responsibilities and duties in and to the Franchise Agreement 2, pursuant to §C of the Assignment of Franchise Agreement, a copy of which is attached as **Exhibit E** (the "Franchise Agreement 2 Second Assignment").

27.     The Franchise Agreements contained a specified ten year terms.

28.     The Franchise Agreements provide that if the franchisee is a business entity, certain provisions of the Franchise Agreements are equally applicable to the owners of that entity (in this case, Defendant Mike Sanchez). Exs. A and B, ¶ 1.

29.     Further, Defendant Mike Sanchez executed and delivered the Guaranties to RE/MAX under which Defendant Mike Sanchez personally and jointly and severally guaranteed full performance under the Franchise Agreements and agreed to be personally bound by and liable for breach of the same (the "Guaranties"), copies of which are attached as **Exhibits F and G**.

30.     Under the Guaranties, Defendant Mike Sanchez agreed that his joint and several liability would not be diminished or affected by a subsequent termination of the Franchise Agreements, and that notwithstanding termination of the Franchise Agreements, provisions of the Guaranties would continue in full force and effect until satisfied in full.

31.     Certain provisions of the Franchise Agreements expressly survive their termination and remain enforceable, as discussed in more detail below.

32.     From approximately May of 2023 through December 30, 2024, RE/MAX Proper operated two RE/MAX franchises in Southern California, with Defendant Mike Sanchez, Meta Capital, Inc., and Defendant MMS serving as the owners.

33.     The Franchise Agreements provides that, upon termination, Defendants must, among other de-identification obligations:

> a.     immediately and clearly distinguish their operations from RE/MAX and not directly or indirectly at any time identify any business with which they are associated as being a current or former RE/MAX office or franchisee, or otherwise hold themselves out to the public in any way as being or having been affiliated with RE/MAX;
>
> b.     immediately remove the RE/MAX Marks from their offices and premises, and from all advertising, marketing, and promotional materials, websites (including third-party directory listings), social media services, and other materials;
>
> c.     immediately notify their state real estate commission that their office is no longer in existence and that they are no longer affiliated with RE/MAX;
>
> d.     immediately cancel all trade, fictitious, or assumed names that contain any reference to any RE/MAX Marks; and
>
> e.     refrain from adopting or using in any manner, or for any purpose, the RE/MAX Marks and trade dress, including any "for sale" sign, trade dress, or identity scheme comprised of lateral elements in red and blue separated by a white element, a design

comprised of a three horizontal bar design, and from the use of a hot air balloon design or a hot air balloon symbol.

Exs. A and B, ¶ 14(B) (provisions expressly applicable to Defendants).

**Termination of the Franchise Agreement**

34.     In violation of Defendants' contractual obligations, in and around December 2024, Defendants failed to make payments to RE/MAX of the required amount owed under the provisions of Subsection 6 of the Franchise Agreements.

35.     On December 20, 2024, RE/MAX sent Defendant Mike Sanchez a Notice of Default and Demand to Cure ("Notice") to inform Defendants that they were in material default of the payment provisions of Subsection 6 of the Franchise Agreements, a copy of which is attached as **Exhibit J**. RE/MAX, through its Notice, provided Defendants the opportunity to cure their defaults by paying the total outstanding balance due to RE/MAX within ten days. RE/MAX indicated that absent timely payment of the outstanding balance owed, the Franchise Agreements as well as all of Defendants' rights as a franchisee under the Franchise Agreements were to automatically terminate on December 30, 2024, pursuant to Section 13 of the Franchise Agreements.

36.     RE/MAX did not receive any correspondence or payment from Defendants in response to the Notice.

37.     On January 3, 2025 and March 6, 2025, RE/MAX sent Defendant Mike Sanchez letters ("Letters") informing Defendants of their obligations post termination of the Franchise Agreements, copies of which are attached as **Exhibits K and L**. In the Letters, RE/MAX

specifically reminded Defendants of their contractual obligations in Paragraph 14(B) of the Franchise Agreements.

**Defendants' Breach of Contract, Counterfeiting, and Infringement**

38.     In May 2025, RE/MAX learned that despite the termination of the Franchise Agreements, Defendants and their sales associates continue to advertise and offer their real estate and brokerage services in Southern California in connection with the RE/MAX Marks and Copyrighted Works, including use of the RE/MAX Proper trade name and use of the RE/MAX Marks and Copyrighted Works on various websites, office signage, property signage, and premise signage, including as set forth below and in the attached **Exhibit M**:



*See* RE/MAX Proper, *Proper Real Estate*, FACEBOOK, https://www.facebook.com/properlb/ (last accessed February 27, 2026).



*See* RE/MAX Commercial, *Re/Max Proper Rancho Cucamonga, CA*, LOOPNET, https://www.loopnet.com/company/remax-proper/rancho-cucamonga-ca/95er6y6l/ (last accessed February 27, 2026).





*See REMAX Proper*, REALTOR.COM, https://www.realtor.com/realestateagency/6314ff93382f1cf63dab048e (last accessed February 27, 2026).

*See Remax Proper*, REALTY.COM, https://www.realty.com/office/361089/remax_proper (last accessed February 27, 2026).





*See* RE/MAX Proper, *Real Estate Done PROPER*, LINKEDIN, https://www.linkedin.com/company/proper-re/ (last accessed February 27, 2026).

*See* RE/MAX, *Proper Real Estate Long Beach, CA*, LOOPNET https://www.loopnet.com/company/proper-real-estate/long-beach-ca/tmfy6s9l/ (last accessed February 27, 2026).



39.     In addition, Defendants continue to maintain their RE/MAX d/b/a with the State of California Department of Real Estate for the Long Beach location, and continued to maintain their RE/MAX d/b/a for the Rancho Cucamonga location until only recently, when it expired on October 16, 2025. A true and correct copy of the State of California Department of Real Estate's records are attached hereto at **Exhibits N and O**.

40.     Defendants' and their Sales Associates' actions have caused, and will continue to cause, RE/MAX monetary and other damages, at a minimum, in an amount to consist of reasonable franchise royalty payments for the continued use of the RE/MAX Marks and Copyrighted Works since termination of the Franchise Agreements, as well as additional damages caused to RE/MAX as a result of Defendants' actions.

41.     Because the Franchise Agreements were terminated effective December 30, 2024, Defendants had two payment obligations. First, Defendants were required to pay RE/MAX the

Outstanding Amounts Defendants owed under the Franchise Agreements. That amount totaled $1,025,258 (including the outstanding Accounts Receivable balance; annual dues written off; incentives granted; waived start-up fees). *See* Exs. A-B, J-L, P-S. Second, Defendants are required to pay Lost Future Revenue to RE/MAX to compensate RE/MAX for Defendants' failure to operate their RE/MAX franchise from the early termination date to the end of the Franchise Agreements' terms. *See* Exs. A and B, ¶ 6(K). Under the formula agreed-upon by the parties, Lost Future Revenue owed to RE/MAX equals $5,130,525. Under its two payment obligations, Defendants owe RE/MAX a total balance of $6,155,783. Defendants have yet to make a payment to RE/MAX for Outstanding Amounts or for Lost Future Revenue.

42.    Pursuant to the Franchise Agreements, RE/MAX is further entitled to liquidated damages in the amount of $500 per day beginning on the 10th day after termination, for each day during which Defendants failed to timely perform their de-identification obligations upon termination. Exs. A and B, ¶14(H). RE/MAX is also entitled to specific performance, injunctive relief, costs, and expenses, including reasonable attorneys' fees, incurred as a result of enforcing the Franchise Agreements. Exs. A and B, ¶¶14(H), 15(G)-(H).

43.    Defendants' infringing use of the RE/MAX Marks began subsequent to RE/MAX's first use and registration of the RE/MAX Marks. In addition, Defendants began making unauthorized use of RE/MAX's Copyrighted Works well subsequent to the creation and fixation of the Works shown in RE/MAX's copyright registrations and subsequent to RE/MAX's registration of those works.

44.    Upon information and belief, Defendants and their Sales Associates will continue to commit the acts complained of in this Complaint unless enjoined.

45.     Defendants are profiting from or have profited from, or at the very least are aware of or willfully blind to, the acts of counterfeiting, infringement, and unfair competition by their Sales Associates, and are therefore contributorily liable for these acts.

46.     Upon information and belief, Defendants' acts were knowingly, deliberately, and intentionally carried out in bad faith, or with a reckless disregard for, or with willful blindness to, RE/MAX's rights, for the purpose of causing confusion and/or trading on RE/MAX's reputation, thereby rendering this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

47.     Upon information and belief, Defendants have profited and continue to profit from their unlawful acts.

48.     Defendants' infringement, counterfeiting, and breach of contract has caused and will continue to cause damages to RE/MAX, including monetary damages and damage to RE/MAX's hard-earned goodwill and reputation, as well as diminished control over the use of the RE/MAX Marks and Copyrighted Works or the quality of the services offered under the RE/MAX Marks and Copyrighted Works.

## COUNT 1
### Breach of Contract (Colorado Common Law)

49.     RE/MAX realleges the allegations contained in each of the paragraphs above.

50.     This is a claim for breach of the Franchise Agreements, Promissory Notes, and Guaranties.

51.     The Franchise Agreements and Guaranties are valid and enforceable.

52.     Defendants have willfully and materially breached the Franchise Agreements, including by:

a.  Using and/or permitting Sales Associates to use, trade on, and/or display RE/MAX Marks and Copyrighted Works in a manner that may mislead or deceive consumers in any way, post termination of the Franchise Agreements; and

b.  Failing to pay to RE/MAX Lost Future Revenue and all other sums due to RE/MAX under the Franchise Agreements.

53.  RE/MAX has fully performed its obligations under the Franchise Agreements.

54.  Defendants' unlawful conduct has caused and, unless restrained, will continue to cause damages and irreparable harm to RE/MAX.

55.  RE/MAX has no adequate remedy at law.

## COUNT II
### Trademark Counterfeiting in Violation of Federal Statute (15 U.S.C. § 1114)

56.  RE/MAX realleges the allegations contained in each of the paragraphs above.

57.  This is a claim for counterfeit use of RE/MAX's federally registered Marks as depicted in Exhibit H.

58.  Defendants and their Sales Associates have used and are using in commerce spurious designations that are identical to, or substantially indistinguishable from, the RE/MAX Marks, or that contain elements that are identical to, or substantially indistinguishable from, elements of the RE/MAX Marks, in connection with services covered by registrations for the RE/MAX Marks.

59.  Defendants and their Sales Associates have used and are using these spurious designations knowing they are counterfeit in connection with the advertisement, promotion, and sale of their services.

60.     Defendants' and their Sales Associates' use of the RE/MAX Marks to advertise and promote their real estate brokerage services was and is without the consent of RE/MAX since the date the Franchise Agreements were terminated.

61.     Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114.

62.     Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

63.     By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further counterfeiting the RE/MAX Marks.

64.     RE/MAX has no adequate remedy at law.

## COUNT III
**Trademark Infringement in Violation of Federal Statute (15 U.S.C. § 1114(1))**

65.     RE/MAX realleges the allegations contained in each of the paragraphs above.

66.     This is a claim for infringement of RE/MAX's federally registered Marks, as depicted in Exhibit H.

67.     Defendants' and their Sales Associates' conduct is likely to cause confusion, mistake, or deception as to the source or origin of their real estate services, or the affiliation, sponsorship, or other relationship between the parties in violation of 15 U.S.C. § 1114(1).

68.    Defendants' and their Sales Associates' conduct also constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

69.    By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further infringing the RE/MAX Marks.

70.    RE/MAX has no adequate remedy at law.

**COUNT IV**
**Unfair Competition in Violation of Federal Statute (15 U.S.C. § 1125(a))**

71.    RE/MAX realleges the allegations contained in each of the paragraphs above.

72.    This is a claim for unfair competition, arising from Defendants' and their Sales Associates' unlawful acts, including, without limitation, use of a false designation of origin which is likely to cause confusion, mistake, or deception as to origin, sponsorship, or approval, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

73.    Defendants' and their Sales Associates' conduct constitutes an attempt to trade on the goodwill that RE/MAX has developed in the RE/MAX Marks, all to the damage of RE/MAX.

74.    By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury and will continue to do so unless restrained and enjoined by this Court from further unfairly competing with RE/MAX by infringing the RE/MAX Marks.

75.    RE/MAX has no adequate remedy at law.

**COUNT V**
**Copyright Infringement in Violation of Federal Statute (17 U.S.C. § 501)**

76.    RE/MAX realleges the allegations contained in each of the paragraphs above.

77.     This is a claim for infringement of RE/MAX's Copyrighted Works, as set forth in Exhibit I, arising from Defendants' and their Sales Associates' unauthorized reproduction and distribution of RE/MAX's Copyrighted Works.

78.     RE/MAX is the sole and lawful owner of all rights, titles, and interest in and to the copyrights in the Copyrighted Works, and these copyrights are valid and subsisting and have been valid and subsisting at all times since their inception.

79.     Defendants and their Sales Associates are not authorized to use RE/MAX's Copyrighted Works in any way.

80.     Defendants and their Sales Associates willfully copied RE/MAX's original works by making or having made advertising and marketing materials that bear designs that are identical or substantially similar to RE/MAX's Copyrighted Works, including after Defendants' limited license to use such Works terminated.

81.     Defendants and their Sales Associates acted with actual or constructive knowledge of RE/MAX's rights in their Copyrighted Works, and Defendants' infringement began after RE/MAX secured its copyright registrations, such that their actions constitute willful infringement of RE/MAX's Copyrighted Works through direct infringement, contributory infringement, and/or inducement to infringe.

82.     Defendants have a bad faith intent to profit from, and have profited from, the use of RE/MAX's Copyrighted Works.

83.     As a result of Defendants' and their Sales Associates' conduct, Defendants have realized and continue to realize profits and other benefits that belong to RE/MAX, entitling RE/MAX to an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

84. By their conduct, Defendants and their Sales Associates have caused RE/MAX irreparable harm, damage, and injury, and will continue to do so unless restrained and enjoined by this Court from further infringing RE/MAX's Copyrighted Works.

85. RE/MAX has no adequate remedy at law.

## Relief Sought

WHEREFORE, RE/MAX requests that this Court:

A. Grant preliminary and permanent injunctive relief enjoining Defendants and their related entities, agents, servants, employees, successors, and assigns, and all those in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from further breaching the Franchise Agreements, including, without limitation, by using the RE/MAX Marks and Copyrighted Works, including but not limited to use on promotional signs, premise and/or storefront signs, property signs, as an entity, corporate, or other trade name, in any domain name, and online.

B. Grant preliminary and permanent injunctive relief enjoining Defendants and their related entities, agents, servants, employees, successors, and assigns and all those in privity, acting in concert, or in participation with them, including but not limited to the Sales Associates, from:

   i. imitating, copying, duplicating, manufacturing, producing, circulating, or otherwise making any use of the RE/MAX Marks or any mark confusingly similar to the RE/MAX Marks;

      ii.     using any unauthorized copy or colorable imitation of the RE/MAX Marks, or false designation of origin or description, in such fashion as is likely to relate or connect Defendants with RE/MAX or the RE/MAX Network or cause confusion;

      iii.    using any false designation of origin or false description which can or is likely to lead the trade or public, or individual members thereof, to believe mistakenly that any service advertised, promoted, offered, or sold by Defendants or their Sales Associates is sponsored, endorsed, connected with, approved, or authorized by RE/MAX;

      iv.    causing likelihood of confusion or injury to RE/MAX's business reputation and to the distinctiveness of the RE/MAX Marks by unauthorized use of identical or confusingly similar marks;

      v.    engaging in any other activity constituting unfair competition or infringement of the RE/MAX Marks or RE/MAX's rights in, or to use, or to exploit the same; and

      vi.    assisting, aiding or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (i) – (v) above.

C.    Find Defendants liable for the causes of action alleged against them in this Complaint.

D.    Order Defendants to cease infringing RE/MAX's Copyrighted Works pursuant to 17 U.S.C. § 502 and order impounded all infringing items and all copies, plates,

molds, or other articles by which such items may be reproduced, pursuant to 17 U.S.C. § 503.

E.  Order Defendants and their principals, agents, servants, employees, successors, and assigns of and all those in privity, acting in concert, or in participation with Defendants who receive actual notice of said order to deliver up, or at RE/MAX's election certify the destruction of, all signs, articles, promotional, advertising, and any other printed materials of any kind bearing one or more of the RE/MAX Marks, Copyrighted Works, any mark or design confusingly similar to the RE/MAX Marks, or any design substantially similar to the Copyrighted Works.

F.  Find Defendants liable, jointly and severally, and award to RE/MAX monetary damages in an amount to be fixed by the Court in its discretion as just, including, but not limited to, all amounts due and owing under the Franchise Agreements, all of Defendants' profits or gains of any kind resulting from Defendants' willful infringement, counterfeiting, and/or acts of unfair competition, and any damages RE/MAX suffered as a result of Defendants' actions pursuant to 15 U.S.C. § 1117(a) and 17 U.S.C. § 504, said damages to be trebled pursuant to 15 U.S.C. § 1117(b), and RE/MAX's reasonable attorneys' fees, costs, and exemplary damages in view of the intentional nature of the acts complained of in this Complaint and the exceptional nature of this case, pursuant to 15 U.S.C. § 1117 (a)-(b), 17 U.S.C. § 505, Paragraph 15(H) of the Franchise Agreements, and applicable common law, state statutory law, and federal law.

G.    At RE/MAX's election at any time prior to judgment in this matter, award to RE/MAX instead of actual damages for counterfeiting, statutory damages under 15 U.S.C. § 1117(c) and instead of actual damages for copyright infringement, statutory damages under 17 U.S.C. § 504(c).

H.    Although a reasonable royalty is generally insufficient, find that one reasonable measure of damages owed to RE/MAX by Defendants for continued use of the RE/MAX Marks and Copyrighted Works after termination of the Franchise Agreements is a reasonable royalty, as determined in part by the amount of fees Defendants would have owed RE/MAX for continued use of the RE/MAX Marks and Copyrighted Works under a valid Franchise Agreement.

I.    Award RE/MAX pre- and post-judgment interest on any monetary award made part of the judgment against Defendants; and

J.    Grant to RE/MAX such other and further relief as the Court may deem just, proper, and equitable under the circumstances.

## Jury Demand

RE/MAX demands a trial by jury on all issues so triable.

Respectfully submitted this 9th day of March 2026.

*/s/ John R. Posthumus*
John R. Posthumus
Polsinelli PC
1401 Lawrence Street, Suite 2300
Denver, CO 80202
Telephone: (303) 572-9300
FAX: (303) 572-7883
Email: jposthumus@polsinelli.com

<u>Plaintiff's Address:</u>
2135 North Bellflower Blvd
Long Beach, CA 90815-3127
mikesanchezoc@gmail.com